IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID LEE BLAKEMORE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:13CV00125 AGF |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the pro se petition of Missouri state prisoner David Lee Blakemore for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State charged Petitioner with first-degree robbery in connection with one incident (Count I); attempted first-degree robbery in connection with a second incident (Count II); and forcible rape, first-degree robbery, kidnapping, and third-degree assault in connection with a third incident (Counts III through VI, respectively). As to all counts, Petitioner was charged with acting with others or another. Following a trial on all counts, the jury found Petitioner guilty of robbery in connection with the first incident, and forcible rape and kidnapping in connection with the third incident, but not guilty on the other three charges. Petitioner was sentenced as a prior and persistent offender to ten years' imprisonment for the robbery, twenty years for the rape, and five years for the kidnapping, with the sentences for the robbery and rape to run concurrently, and the sentence for the kidnapping to run consecutively to the sentence for the rape (for a total of 25 years).

For federal habeas relief, Petitioner argues that his constitutional rights were violated by: (1) the trial court's failure to sever the counts arising out of the three different incidents; (2) the trial court's refusal to submit a requested jury instruction on "mere presence"; (3) defense counsel's failure effectively to impeach the rape victim's credibility; (4) defense counsel's failure to call Petitioner as a witness; and (5) the trial court's failure to hold an evidentiary hearing on Petitioner's postconviction motion. He requests an evidentiary hearing in this Court on his claims. For the reasons set forth below, habeas relief, and the request for a hearing, will be denied.

## BACKGROUND

### Trial

Prior to trial, Petitioner filed a motion for a declaration that the joinder of the offenses was improper, and in the alternative, for severance of the offenses for trial. (Resp. Ex. C at 19-22.) The trial court denied the motion. In a motion to reconsider, Petitioner particularly sought to sever the first-degree robbery charge from the forcible rape and kidnapping charges. This motion was also denied.

The evidence at trial showed the following. At approximately 11:00 p.m., on January 7, 2006, as he was driving to a club, James Harris noticed a black SUV behind him flashing its lights like a police vehicle. Harris pulled over and rolled down his windows. The SUV pulled up on the driver's side of Harris's vehicle. Four individuals (three men and one woman) got out of the SUV, including Petitioner and Eddie Head. Petitioner got into Harris's passenger seat and ordered Harris to restart his car, threatening to shoot Harris if he did not do so. Harris started the vehicle and then opened

2

the door and jumped out. As he was running away, he looked back and saw Petitioner move into the driver's seat of Harris's vehicle and drive away.

On January 10, 2006, at approximately 1:10 a.m., two men matching the descriptions of Petitioner and Head followed Adam Long as he was driving home. The two men arrived at Long's home, a few blocks from the incident on January 7, 2006, in a cream-colored SUV and attempted to get into Long's vehicle. The two men entered Long's garage, opened the door to Long's vehicle and threatened him with a wooden board. After Long fought the men off, the men left. Long described one of the men as wearing a red basketball jersey.

About an hour later, at approximately 2:15 a.m., Petitioner and Head approached a woman, J.W., as she was waiting in a check-out line at a convenience store about one block away from Long's residence. Petitioner and Head followed J.W. as she left the store. As J.W. neared her apartment, Head grabbed her, poking something in her back, and dragged her into an alley behind her apartment, giving instructions to Petitioner as he did so. Petitioner complied with Head's instructions and also served as a lookout as Head dragged J.W. Once Head had J.W. backed up against a wall in the alley, first Petitioner (at Head's direction) and then Head removed J.W.'s clothes. Head slammed J.W. into the ground as he removed her clothes, and had sexual intercourse with her. During the rape, Petitioner told Head that somebody was coming. Petitioner and Head fled, and J.W. ran to the convenience store without her pants and screamed to the clerk that she had just been raped. The clerk noticed that J.W. was bleeding and called the police. Video cameras inside the convenience store captured the initial interaction among Petitioner,

3

Head, and J.W., and also J.W. running back to the store several minutes later, naked from the waist down. The video footage showed Petitioner wearing a red basketball jersey. J.W. identified Petitioner and Head in separate photo line-ups, and identified Petitioner at trial as the man who assisted in the kidnapping and rape. In another photo line-up, Harris identified Head as the driver of the SUV and Petitioner as the person who entered the passenger seat of Harris's vehicle. Detectives interviewed Petitioner about these offenses, and he confessed to stealing Harris's vehicle.

Defense counsel impeached J.W. with inconsistencies in her earlier statements about Petitioner's involvement in the rape. Petitioner did not testify or otherwise present evidence. Before the case was submitted to the jury, the trial court asked Petitioner whether he understood his right to testify and whether he desired to testify. Petitioner, who had multiple prior convictions, acknowledged knowing that he had the right to testify and told the court that he had decided that he did not want to testify. (Resp. Ex. B at 369-70.)

The verdict directors on all six counts required the jury to find that Petitioner was not merely present, but actually acted together with or aided or encouraged Head for each of the offenses. The trial court instructed the jury to give separate consideration to each count and to reach a separate verdict for each count. Petitioner requested the form instruction on the issue of "mere presence" that instructs the jury that mere presence is not sufficient evidence of being a participant, but can be considered as evidence of participation. The trial court refused to give this instruction.

During a hearing on Petitioner's motion for new trial, defense counsel argued that Petitioner's decision not to testify was influenced by the failure to grant severance, because if he testified on the first-degree robbery charge he would also have had to testify on the rape charge. He also argued that the failure to sever resulted in the jury hearing evidence that suggested that he police "were looking for individuals that were involved in all sorts of criminal activity in the area." (Resp. Ex. B at 467-68.) The trial court denied the motion for a new trial, and sentenced Petitioner as set forth above. At sentencing, Petitioner indicated that he did not disagree with the decisions that trial counsel made at trial.

**Direct Appeal**

On direct appeal, Petitioner challenged (1) the denial of his motion for improper joinder and for failing to sever the robbery charge pertaining to Harris from the rape and kidnapping charges pertaining to J.W. and (2) the failure to give a requested jury instruction on mere presence. The Missouri Court of Appeals analyzed joinder and severance separately. With regard to joinder, the court found sufficient similarity based on the closeness in time and location, the evidence showing that Head and Petitioner acted together in all three incidents, and the similar tactics used in all charged offenses. With regard to severance, the state appellate court also found that the state's evidence showed both Harris and J.W. identified the Head and Petitioner as perpetrators, and that the evidence for the incidents was sufficiently simple and distinct to preclude any claim of actual prejudice. Furthermore, the appellate court noted that the evidence on each of the three counts on which the jury found Petitioner guilty was overwhelming. Finally,

the fact that the jury acquitted Petitioner on the middle incident with relatively weak evidence showed that the jury kept the offenses separate.

On the instructional claim, the Missouri Court of Appeals found that the notes on use for the instruction on mere presence gave the trial court discretion on whether or not to give this instruction. The appellate court held that because there was no evidence suggesting that Petitioner was a mere innocent bystander at any of the charged offenses, he was not entitled to this instruction.

**State Postconviction Proceedings**

In his motion for postconviction relief Petitioner claimed that defense counsel was ineffective in failing effectively to impeach the rape victim's credibility as to whether she was actually raped or whether a rape was merely attempted, and in failing to call Petitioner as a witness. The motion court denied Petitioner's request for an evidentiary hearing and denied his postconviction motion. The motion court found that defense counsel competently cross-examined J.W. The motion court also noted that the penalty for attempted rape was the same as rape; therefore, the suggestion that showing that it was only an attempted rape would have undermined J.W.'s credibility about Petitioner's involvement in aiding Head was speculative. (Resp. Ex. G at 39.)

The motion court found that Petitioner's second claim of ineffective assistance of counsel was refuted by the record as Petitioner had acknowledged in open court that he had made the decision that he did not want to testify and that it was his decision alone.

The Missouri Court of Appeals affirmed the denial of postconviction relief. The Missouri Court of Appeals noted that defense counsel did impeach J.W. with

6

inconsistencies in her earlier statements about Petitioner's involvement in the rape. The Missouri Court of Appeals concluded that the strategy of showing that Petitioner had minimal involvement in the rape, as opposed to showing that Head only attempted to rape J.W., was a reasonable strategy. (Resp. Ex. J at 4-5.)

The Missouri Court of Appeals agreed with the trial court that the record showed that Petitioner made the decision not to testify. To the extent that Petitioner's claim could be viewed as challenging counsel's advice on this issue, the appellate court found that any advice from counsel that Petitioner should not testify was reasonable in light of his criminal history. *Id*. at 5-6.

**Federal Habeas Petition**

As noted above, in his federal habeas petition, Petitioner asserts that his constitutional rights were violated by (1) the trial court's failure to sever the counts arising out of the three different incidents; (2) the trial court's refusal to submit the requested jury instruction on mere presence; (3) defense counsel's failure effectively to impeach J.W.'s credibility; (4) defense counsel's failure to call Petitioner as a witness; and (5) the trial court's failure to hold an evidentiary hearing on Petitioner's postconviction motion. Petitioner requests an evidentiary hearing in this Court on his claims.

## DISCUSSION

**Standard of Review**

Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that application for a writ of

7

habeas corpus cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

> "[C]learly established Federal law" for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions. And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (citations omitted).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, a habeas petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

"Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's

8

conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id*. at 689 (citations omitted). To show prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

When, as here, an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *See Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id*. at 699.

**Failure to Sever Charges**

To obtain federal habeas relief for a state court's failure to sever different charges, a petitioner must show that the failure to sever rendered the trial "fundamentally unfair." *Wharton–El v. Nix,* 38 F.3d 372, 374 (8th Cir.1994) (citation omitted).

Upon review of the record, the Court finds no basis for a determination that the joinder of the offenses rendered the trial fundamentally unfair. The evidence with respect to each incident was relatively distinct, and the trial court instructed the jury to give separate consideration to the evidence of each offense and to reach separate verdicts with

9

respect to each count. The fact that the jury reached different conclusions about Petitioner's culpability with respect to the incidents, acquitting Petitioner on the middle incident with relatively weak evidence, indicates that the jury heeded the trial court's instructions and separately considered each offense.

Moreover, Petitioner has not made a sufficient showing of prejudice as a result of the state court's failure to sever the offenses. "A claim of prejudice based on the possibility that a defendant's choices for acquittal may be better in separate trials is an insufficient justification for severance." *Head v. Bowersox*, No. 4:11CV741 CDP, 2012 WL 482259, at *5 (E.D. Mo. Feb. 14, 2012). "Likewise, a bald assertion that defendant may want to testify on one count but not another is insufficient; rather, he or she must make a persuasive and detailed showing regarding the testimony he would give on one count he wishes severed and the reason he cannot testify on the other counts." *Id.* Petitioner has not made such a detailed showing, and his vague assertions of prejudice are insufficient. Therefore, Petitioner's first ground for federal habeas relief is without merit.

**Failure to Instruct the Jury on Mere Presence**

Habeas relief may be granted for erroneous jury instructions only when the error constituted a fundamental defect that resulted "in a complete miscarriage of justice, [or] an omission inconsistent with rudimentary demands of a fair trial." *Crump v. Caspari*, 116 F.3d 326, 327 (8th Cir.1997*); see also Johnson v. Russel,* No. 4:10 CV 1613 RWS, 2013 WL 4805864, at *1 (E.D. Mo. Sept. 9, 2013).

Here, Petitioner has not established an error that deprived him of a fair trial. Petitioner does not assert that the instructions as a whole failed to give a full and correct

statement of the applicable law, and although Petitioner asserts that the trial court should have included an optional form instruction on mere presence, the verdict directors on all counts accomplished this purpose by requiring the jury to find that Petitioner was not merely present but actually acted together with or aided or encouraged Head for each of the offenses. Therefore, the refusal to give Petitioner's requested instruction did not violate Petitioner's constitutional rights, and this second ground for habeas relief will also be denied. *See Wedemann v. Solem*, 826 F.2d 766, 768 (8th Cir. 1987) (finding that where "the instructions as a whole required the jury to find each element of the offense . . . beyond a reasonable doubt," a refusal to give a requested jury instruction on mere presence at the scene did not violate the habeas petitioner's due process rights).

**Ineffective Assistance of Counsel Claims**

The conclusions of the Missouri Court of Appeals that Petitioner did not receive ineffective assistance of counsel based on the defense counsel's cross-examination of the rape victim and failure to call Petitioner as a witness were not contrary to or an unreasonable application of federal law.

As noted by the state courts, defense counsel's cross-examination of J.W. focused on showing that Petitioner had minimal involvement in the rape, as opposed to showing that Head only attempted to rape the victim. The state courts reasonably concluded that this decision was a matter of sound trial strategy. With respect to Petitioner's suggestion that showing it was only an attempted rape might have undermined J.W.'s credibility about Petitioner's involvement in and culpability for the rape, the state courts reasonably

concluded that because the penalty for attempted rape was the same as for rape, Mo. Rev. Stat. § 566.030, Petitioner's assertion was too speculative to demonstrate prejudice.

Likewise, the record supports the state courts' finding that the trial court questioned Petitioner regarding his decision not to testify, and that Petitioner reported that it was his decision alone not to testify. *See Krimmel v. Hopkins*, 44 F.3d 704, 710 (8th Cir. 1995) (finding ineffective assistance of counsel claim based on advice to testify without merit where the record "demonstrate[d] that [the petitioner] was advised of the advantages and disadvantages of testifying and that the decision to testify was his, not his counsel's"). Further, in light of Petitioner's multiple prior convictions, any advice by counsel not to testify would have fallen within the "wide range of reasonable professional assistance" permitted by *Strickland*. *See Russell v. Norman*, No. 4:11CV2016 TIA, 2015 WL 1725976, at *15 (E.D. Mo. Apr. 15, 2015) (finding that counsel's advice not to testify "not only fell within the wide range of reasonable professional assistance but was competent and sound" where "Petitioner had prior convictions for domestic assault and robbery[, and] [i]f he had testified, these convictions would, in all probability, have been revealed"); *Speer v. Wallace*, No. 4:12CV2220 ACL, 2016 WL 759323, at *9 (E.D. Mo. Feb. 26, 2016) ("[C]ounsel's advice not to testify was reasonable trial strategy in light of Speer's extensive criminal history."). Accordingly, Petitioner's third and fourth grounds for habeas relief are without merit.

**State Court's Failure to Hold a Postconviction Evidentiary Hearing**

The state court's denial of an evidentiary hearing is not an independent claim, but, instead, an infirmity in the state post-conviction proceeding. "[A]n infirmity in a state

12

post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997). Therefore, the Court will deny this final ground for habeas relief.

With regard to Petitioner's request for an evidentiary hearing in this Court, the AEDPA sharply limits a federal district court's power to conduct an evidentiary hearing. *Perry v. Kemna,* 356 F.3d 880, 889 (8th Cir. 2004). "Evidentiary hearings in habeas proceedings are barred unless the petitioner was unable to develop his claim in state court despite diligent effort." *Wright v. Bowersox*, 720 F.3d 979, 987 (8th Cir. 2013). Petitioner must also show that his claim relies on either "(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A). Petitioner has not met these requirements. Moreover, Petitioner has not indicated what facts he would intend to establish at such a hearing. Therefore, the Court denies Petitioner's request for an evidentiary hearing.

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of David Lee Blakemore for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not be issued in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March 2016.